UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 04-10046-RGS

UNITED STATES OF AMERICA

v.

JOSE ENRIQUE GONZALEZ
A/K/A "KING STRIKE"
A/K/A "TITO"

MEMORANDUM AND ORDER ON GOVERNMENT'S
MOTION FOR DETENTION

APRIL 13, 2004

BOWLER, Ch.U.S.M.J.

On or about February 24, 2004, defendant Jose Enrique
Gonzalez (the "defendant"), a/k/a "King Faith" and "Tito," was
arrested pursuant to a five count Indictment returned in this
district on February 19, 2004.  Count One of the Indictment
charges the defendant and codefendant Angel Gonzalez (the
"codefendant") (collectively "the defendants") with conspiracy to
distribute cocaine base in violation of Title 21, United States
Code, Sections 841(a)(1) and 841(b)(1)(B)(iii), all in violation
of Title 21, United States Code, Section 846.  Count Three

charges the defendants with distribution of cocaine base in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(iii) and aiding and abetting in violation of Title 18, United States Code, Section 2.  Counts four and five charge the defendant with distribution of cocaine base in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(iii).  The Indictment also charges a forfeiture allegation in violation of Title 21, United States Code, Section 853.

The defendant had his initial appearance before the Honorable Charles B. Swartwood on February 24, 2004.  He was represented by court appointed counsel.  The government moved to detain the defendant on the grounds that there is no condition or combination of conditions that will reasonably assure (1) the safety of any other person and the community (2) the appearance of the defendant and (3) that the defendant will not obstruct justice.  18 U.S.C. §§ 3142 (f)(1)(C), (f)(1)(D), (f)(2)(A) and (f)(2)(B).  The government moved for a three day continuance and a detention hearing was scheduled before this court on March 1, 2004.

On that date this court conducted a hearing on the issue of detention.  The defendant was represented by court appointed counsel.  The government called one witness speaking to the issue of detention.  The defendant did not call any witnesses.  At the

2

conclusion of the hearing defense counsel requested a continuance
to explore possible alternatives to detention.  This court
scheduled a further hearing for March 17, 2004.

On that date defense counsel proffered a possible third
party custodian, additional exhibits and made further argument.
This court requested that the proposed custodian be interviewed
by Pretrial Services.  That interview took place and the report
was forwarded to this court on March 23, 2004.  The matter is now
ripe for review.

DISCUSSION

I.   A.   Under the provisions of 18 U.S.C. § 3142(c), "[t]he
judicial officer may not impose a financial condition that
results in the pretrial detention of the person."  Thus, a
defendant must be released under the provisions of 18 U.S.C. §
3142(b) or (c), or be detained pending trial under the provisions
of 18 U.S.C. § 3142(e) and after a hearing pursuant to 18 U.S.C.
§ 3142(f).  See 18 U.S.C. § 3142(a).

Under 18 U.S.C.§ 3142(e), a defendant may be ordered
detained pending trial if the judicial officer finds one of the
following three conditions to be true that: (1) by clear and
convincing evidence, after a detention hearing under the
provisions of § 3142(f), ". . . no condition or combination of
conditions (set forth under 18 U.S.C.§ 3142(b) or (c)) will

3

reasonably assure the safety of any other person or the community . . .;" (2) by a preponderance of the evidence, after a detention hearing under the provisions of 18 U.S.C. § 3142(f), ". . . no condition or combination of conditions (set forth under 18 U.S.C. § 3142(b) or (c)) will reasonably assure the appearance of the person as required . . .;" or (3) there is a serious risk the defendant will flee.[1]  This determination is made by the court at the conclusion of a detention hearing.

B.    The government is entitled to move for detention in a case that:

(1)    involves a crime of violence within the meaning of 18 U.S.C. § 3156(a)(4);[2]

_____

[1] The distinction between the former and the latter are made clear by the very language of 18 U.S.C. § 3142(f).  In the last paragraph of that section, Congress has stated there must be clear and convincing evidence to authorize pretrial detention when the question is whether any condition or combination of conditions "will reasonably assure the safety of any other person and the community . . .." (Latter emphasis added.)  By not requiring that same standard vis a vis an assessment of risk of flight, it is clear that a lesser standard--i.e., preponderance of the evidence-- applied.  That is precisely the holding in the Second Circuit.  See e.g., United States v. Jackson, 823 F.D 4, 5 (D.C.Cir. 1987); United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. 1986), cert. dismissed, 107 S.Ct. 562 (1986); see also United States v. Patriarca, 948 F.2d 789, 792 (1st Cir. 1991).

[2] Section 3156 of Title 18 of the United States Code defines a crime of violence as:
    (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another, or

    (B) any other offense that is a felony and that, by its nature, involves a

4

(2)    involves an offense punishable by death or life imprisonment;

(3)    involves an offense prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act for which the maximum authorized punishment is imprisonment for ten years or more;[3] or

(4)    involves any felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence, or of a crime, the punishment for which is death or life imprisonment, or a ten year [or more] offense under the Controlled Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court <u>sua</u> <u>sponte</u> may move for, or set, a detention hearing where there is a serious risk of flight, or a serious risk of obstruction of justice or threats to potential witnesses.  <u>See</u> 18 U.S.C. § 3142(f).


C.    In determining whether there are conditions of release which will reasonably assure the appearance of the person and the

---

substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
18 U.S.C. § 3156(a)(4).

[3] The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense--not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines. <u>See</u> <u>United States v. Moss</u>, 887 F.2d 333, 336-7 (1st Cir. 1989).

safety of any other person and the community, this court must

take into account:

> (1) the nature and circumstances of the offense
> charged, including whether the offense is a crime
> of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the
> accused;
>
> (3) the history and characteristics of the person,
> including--
>
>> (A) his character, physical and mental
>> condition, family ties, employment, financial
>> resources, length of residence in the
>> community, community ties, past conduct,
>> history relating to drug or alcohol abuse,
>> criminal history, and record concerning
>> appearance at court proceedings; and
>>
>> (B) whether, at the time of the current
>> offense or arrest, he was on probation, on
>> parole, or other release pending trial,
>> sentencing, appeal, or completion of sentence
>> for an offense under Federal, State or local
>> law; and
>
> (4) the nature and seriousness of the danger to
> any other person or the community that would be
> posed by the person's release.

18 U.S.C. § 3142(g).


D.   The burden of persuasion remains with the government to

establish "that no condition or combination of conditions will

reasonably assure the appearance of the person as required and

the safety of any other person and the community."  The burden

then rests on the defendant to come forward with evidence

indicating that these general findings are not applicable to him

6

for whatever reason advanced.  The government must satisfy its
position with respect to risk of flight by a preponderance of
evidence and with respect to dangerousness by clear and
convincing evidence.  See supra footnote 3.  This court must then
weigh all relevant factors [set forth under §3142(g)] and
determine whether "any condition or combination of conditions
will reasonably assure the appearance of the [defendant] as
required and the safety of any other person and the community."
The decision is an individualized one based on all relevant
factors.  United States v. Patriarca, 948 F.2d 789, 794 (
Cir. 1991); see United States v. Jessup, 757 F.2d 378, 387-88
(1st Cir. 1985).

Moreover, one may be considered a danger to the community
even in the absence of a finding by clear and convincing evidence
that the accused will engage in physical violence.  Conversely,
as noted by the Committee on the Judiciary (Report of the
Committee on the Judiciary, United States Senate), on S. 215.
98th Congress, Report No. 98-147 (May 25, 1983):

> The concept of defendant's
> dangerousness is described throughout
> this chapter by the term "safety of
> any other person or the community."
> The reference to safety of any other
> person is intended to cover the
> situation in which the safety of a
> particular identifiable individual,
> perhaps a victim or witness, is of
> concern, while the language referring
> to the safety of the community refers
> to the danger that the defendant might

7

> engage in criminal activity to the
> detriment of the community.  The
> Committee intends that the concern about
> safety be given a broader construction
> than merely danger of harm involving
> physical violence....  The Committee
> also emphasizes that the risk that a
> defendant will continue to engage in
> drug trafficking constitutes a danger to
> the "safety of any other person or the
> community."

Id. (Emphasis added; footnotes omitted); see United States v.

Patriarca, 948 F.2d 789, 792, n.2 (1st Cir. 1991) (danger to

community does not refer only to risk of physical violence); see

also United States v. Tortora, 922 F.2d 880, 884 (1st Cir. 1990)

(stating danger in context of 18 U.S.C. § 3142(g) not meant to

refer only to physical violence); United States v. Hawkins, 617

F.2d 59 (5th Cir.), cert. denied, 449 U.S. 962 (1980)

(trafficking in controlled substances).[4]

The issue critical to determining whether to detain a

defendant is therefore, whether, with respect to the defendant,

based on the guidelines set forth supra in part C of this Order,

any condition or combination of conditions of release exist that

will reasonably assure the safety of any person and the

community; and the presence of the defendant.  18 U.S.C. §

3142(e).

---

[4] A defendant may be ordered detained as a danger to the safety of another or to the
community, however, only if the judicial officer determines that a detention hearing is
appropriate under the provisions of moved under 18 U.S.C. § 3142(f)(l), and the judicial officer
has determined that a hearing is appropriate under that latter section.  See United States v. Ploof,
851 F.2d 7 (1st Cir. 1988).

E.   "Where, as here, a defendant is charged with a controlled substance offense punishable by a maximum term of 10 years or more, the government is aided by § 3142(e)'s rebuttable flight presumption."[5]  <u>United States v. Palmer-Contreras</u>, 835 F.2d 15, 17 (1st Cir. 1987) (per curiam).  The presumption is not limited to risk of flight.  Rather, the presumption has two components.  One component is that the person poses a risk of flight and the second component is that the person "represents a danger to the community."  <u>United States v. Moss</u>, 887 F.2d 333, 335 n.3 (1st Cir. 1989) (per curiam).

Thus, under section 3142(e) the judicial officer must consider the rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act <u>or</u> an offense under 18 U.S.C. § 924(c), the use of a firearm to commit a felony.  18 U.S.C. § 3142(e).

---

[5] The presumption reflects Congressional findings that persons who deal in drugs often have the necessary resources and foreign ties to escape to other countries. <u>United States v. Palmer-Contreras</u>, 835 F.2d 15, 17 (1st Cir. 1987) (per curiam). Consequently, imposing "a large bond is often ineffective in deterring flight." <u>United States v. Perez-Franco</u>, 839 F.2d 867, 869-70 (1st Cir. 1988).

The presumption raised as a result of finding probable cause that a defendant committed the relevant narcotics offense is always entitled to evidentiary weight, the amount of which, if at all, depends on the nature of the production by the defendant and the other factors set forth under § 3142(g).  The defendant, however, "bears only the burden of production."  United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988).  As explained by the United States Court of Appeals with regard to the statutory presumption of section 3142(e):

> Section 3142(e), however, only imposes a burden of production on a defendant.  The burden of persuasion remains with the government.  Nevertheless, even after a defendant has introduced some evidence to rebut the flight presumption, the presumption does not disappear, but retains evidentiary weight--the amount depending on how closely defendant's case resembles the congressional paradigm, Jessup, 757 F.2d at 387--to be considered along with other factors.

United States v. Palmer-Contreras, 835 F.2d at 17-18; see also, United States v. Perez-Franco, 839 F.2d at 869-70.

Finally, it is important to note that the presumption is triggered by the statutory penalty prescribed irrespective of the actual or likely sentence imposed upon the particular defendant.  See United States v. Moss, 887 F.2d 333, 337 (1st Cir. 1989) (per curiam).  The fact that a defendant may receive a sentence of less than ten years does not make the presumption inapplicable.  Id. at 337.  Rather, this court may consider such a factor with regard to the weight this court gives to the presumption.  Id. At

10

337.

II.   The defendant, Jose Enrique Gonzalez, is 28 years of age.
He was born on June 3, 1975 in Puerto Rico and settled in
Lawrence, MA in 1988 or 1999.  He completed the eleventh grade at
Lawrence High School.  The defendant is single and has no
children.

The defendant's mother and sister reside in Hampton, New
Hampshire.  The defendant's father and brother reside in Puerto
Rico.  The defendant has not had any contact with his father and
brother for ten years.

For the two and one half months prior to his arrest on the
above-captioned charges, the defendant was living at the Chips
Inn Motel in Hampton, New Hampshire.  Prior to moving into the
motel the defendant resided with a former girlfriend on Farnham
Street in Lawrence for a year.  This was preceded by a six month
period of incarceration.  Prior to being incarcerated the
defendant lived with another girlfriend at 9 Bevel Street in
Lawrence.  Prior to living with girlfriends the defendant lived
with his mother at two different addresses in Lawrence.

Prior to his arrest the defendant was employed as a mechanic
at A & L Auto Repair in Lowell for one year.  His past employment
includes three years as a plumber with Free Flow Plumbing and
Drinking Company in Bradford, MA, where he worked on a commission

11

basis.  The defendant reports no assets and liabilities in the
amount of $2,000.

The defendant told Pretrial Services that he was shot in the
lung but he reports no sequelae from this injury.  By his own
admission the defendant notes that he has used marijuana on a
weekly basis for the last five years.  He has used cocaine in the
past.  The defendant participated in a drug program as part of
his probation.

The defendant has a prior criminal record.  He has prior
convictions for possession of a Class D controlled substance,
assault and battery on a police officer, possession of
burglarious tools, malicious destruction of property, knowingly
receiving stolen goods, operating after revocation of license
(twice), distribution/dispensing a Class B controlled substance
and fishing without a license.

III.  The relevant evidence at the detention hearing showed the
following.

The government called Special Agent Jeffrey E. Wood, Jr.
("Wood") of the Federal Bureau of Investigation ("FBI").  He
testified that he has been so employed for four years and that he
is currently assigned to the FBI's Violent Crime Task Force (the
"Task Force"), which focuses on gang activity involving guns and
drugs on the North Shore of Massachusetts.  Wood noted that prior

to joining the FBI he served with the Bureau of Diplomatic
Security of the United States Department of State for two years.

Wood testified that he is the co-case agent assigned to the
investigation leading to the Indictment of the defendant on the
above captioned charges.  Wood noted that several law enforcement
agencies, including the FBI, the Bureau of Alcohol, Tobacco and
Firearms, the Massachusetts State Police as well as local police
departments, participated in the investigation which focused on
senior members of the "Latin Kings" gang.  Wood added that the
investigation employed the use of cooperating individuals who
made controlled purchases of drugs from members gang members
including the defendants.

In further testimony Wood identified a document, which was
admitted as Government Exhibit # 1, as an affidavit of FBI
Special Agent Mark Karangekis.  The affidavit provides background
information about the Latin Kings and sets forth the defendant's
status in the organization.  According to paragraph 53 of
Government Exhibit # 1 the defendant "retired from a leadership
role in the Latin Kings after being shot by a member of the rival
Latin Gangsta Disciples."

Wood described the attachment to the affidavit as the
"manifesto" of the Latin Kings, which sets forth in writing the
rules of the gang including how a member will be "violated or
terminated" for breaking the rules.  Wood explained that a

13

cooperating individual, who was a member of the Latin Kings, said that the Latin Kings "will injure or kill cooperating witnesses."

In further testimony Wood identified a document, which was admitted as Government Exhibit # 2, as chart reflecting the drug purchases made from the defendant.[6]  According to the chart, a cooperating witness ("CW") made three purchases of crack cocaine from the defendant between September 16, 2003 and November 13, 2003.  The total amount of crack cocaine sold was 29.5 grams, according to reports of analyses conducted by the Drug Enforcement Administration which are attached to Government Exhibit # 2.  All of the transactions took place in Lawrence and the defendant was accompanied by the codefendant during one of the transactions.

Wood testified that during the September 16, 2003 "buy" the CW met with the codefendant and asked about purchasing 14 grams of crack cocaine.  The CW and the codefendant went to 286-8 Farnham Street in Lawrence to meet the defendant who the CW knew as "King Strike."  The codefendant entered the building and returned with the defendant who entered the backseat of the vehicle.  The defendant said that he had to meet with his supplier "Tony" on Cross Street in Lawrence.  Tony gave the cocaine to the defendant who in turn gave it to the CW to inspect.

---

[6] The chart also reflects purchases made from the codefendant.

The CW then accompanied the defendant back to 286-8 Farnham Street, where the defendant cooked the cocaine into crack cocaine.  The CW paid the defendant $540 of which $500 was for the cocaine and $40 was for the cooking.

In further testimony Wood identified a videocassette, which was admitted as Government Exhibit # 3, as a surveillance tape depicting the drug transaction on September 16, 2003.  Two excerpts of the tape were played in open court.

In the first excerpt the defendant and the codefendant can be observed entering the vehicle.  Wood identified the defendant and the codefendant.  The codefendant states the defendant is going to get 14 grams of cocaine and "chef" it.  Wood explained that the expression refers to cooking the cocaine, which converts it into crack cocaine.

During the second excerpt the supplier, an individual named "Tony," can be observed entering the vehicle.  He appears to be giving something to the defendant, who then complains about the quality.  He states, "It doesn't smell like the last one."  The defendant then directs the CW to drive back to Lawrence.  The defendant tells the CW that he cooks 200 to 300 grams of crack cocaine a week for a "crew."

On cross examination it was established that Wood became involved in the case about 18 months ago.  Wood stated that the September 16, 2003 transaction was the only transaction in which

15

the defendant was videotaped, although there are audiotapes of the transactions on October 21, 2003 and November 13, 2003. Wood added that he did not know whose hand passed the drugs forward from the back seat of the vehicle.

On further cross examination Wood stated that he was unaware of any witness intimidation on the part of the defendant. Wood also noted that the woman who is observed on the videotape is a paid informant, who has both sold and used drugs in the past.

In conclusion defense counsel offered a copy of a criminal docket and related documents from the Lawrence District Court reflecting a drug charge against the defendant arising from events on October 19, 2000. The documents were admitted as Defendant's Exhibit # A. Defense counsel offered the document to show that the defendant was told to self-report on April 20, 2001 and that he did, in fact, appear.

At the continuation of the detention hearing on March 17, 2003, defense counsel proffered several documents. The first document, which was admitted as Defendant's Exhibit # B, is an undated arrest report from the Lawrence Police Department relating to events on June 6, 1993, involving a stolen motor vehicle in which the defendant, a passenger, and his cousin were observed and subsequently arrested. According to the report, the defendant fled from the scene when the vehicle was stopped by law enforcement authorities.

Defendant's Exhibit # C is a letter dated March 8, 2004, from David Cloto ("Cloto"), the defendant's former employer at Drain King. Cloto notes that he employed the defendant for a year and a half in 2001 until a "business slow down" required lay offs including the defendant. Cloto described the defendant as "a dependable, hard working employee." In conclusion Cloto states that he is aware the defendant is being held on a federal drug charge, but that if the defendant is released he could employ the defendant on a full time basis at a salary of $395 a week.

Defendant's Exhibit # D is a letter dated March 12, 2004, from Luis Feliciano ("Feliciano") of A & L Auto Body in Lowell. According to the letter, the defendant has been working for Feliciano on a full time basis for the last year as an auto body repairman. Feliciano, who acknowledges that he is aware that the defendant is being held on federal drug charges, states that he would like to have the defendant return to full time employment if he can be released on bail.

The final document, which was admitted as Defendant's Exhibit # E, an affidavit dated March 16, 2004, from Juan Feliciano ("Feliciano Sr."), who is the 56 year old father of Feliciano. Feliciano Sr., who has lived in Lawrence for 34 years and is aware of the pending charges against the defendant as well as the defendant's past record of a drug charges and breaking

17

into a car, states that he is willing to serve as a third party custodian in the event of the defendant's release.  Feliciano Sr. states that the defendant could live in his home at 255 Water Street in Lawrence and that he would be willing, to the extent possible, to post a cash bond to secure the defendant's release.

In addition, at the request of defense counsel this court directed Pretrial Services to interview the defendant's 46 year old mother, Maria Santos-Torres ("Ms. Santos-Torres") to ascertain her suitability as a third party custodian in the event of the defendant's release.  Pretrial Services recommended that while Ms. Santos-Torres, a resident of Hampton, New Hampshire, would be a suitable custodian, the defendant should be detained based on his prior criminal record and the current charges before this court.

IV.  The return of the Indictment in the United States District Court for the District of Massachusetts in this case establishes the existence of probable cause that the defendant committed the crimes for which he is charged in the Indictment.

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(C), (f)(1)(D), (f)(2)(A) and (f)(2)(B).  The government must prove by clear and convincing evidence that if released the defendant would pose a serious danger to any person or the community or that he would obstruct justice.  In

18

contradistinction, the government must demonstrate only by a preponderance of evidence that the defendant, if released, constitutes a serious risk of flight or failure to appear.  The two different standards are used because of the clear language expressed in the last paragraph of 18 U.S.C. § 3142(f) which states "that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." Congress, by not attaching that language to the risk of flight clause, infers that a lower standard of proof is all that is necessary to establish the government's case.

A. Danger to the Community

This court first addresses the likelihood that the defendant, if released, would be a danger to another person or the community.

The government's case against the defendant is strong.  The defendant was surveilled on three occasions within a two month period selling a total of 29.5 grams of crack cocaine to a CW. All of the transactions were captured on audiotape and the September 16, 2003 transaction was recorded on videotape.  On the audio portion of the videotape the defendant can be heard bragging that he cooks 200 to 300 grams of crack cocaine a week for a "crew."

19

The surveilled transactions are certainly not the defendant's first forays into drugs.  In 1993 the defendant was found guilty of possession of a Class D controlled substance in the Lawrence District Court.  In 2000 the defendant was convicted of distributing/dispensing a Class B controlled substance in the same court.  In addition he has convictions for numerous other offenses.

While it appears that the defendant has a supportive mother and employers willing to provide him with a job, in the past this clearly has not been enough to keep him away from criminal behavior during the last decade.  There is nothing in his most recent past to suggest that the defendant will refrain criminal behavior, particularly selling drugs, if he is released.

The defendant did not proffer any credible evidence to detract from the government's assertion that he has committed a serious drug crime involving a narcotic drug and that he is a danger to the community or any person.  This court finds by clear and convincing evidence that there is no condition or combination of conditions that will assure the safety of any person or the community if the defendant is released.

B. <u>Risk of Flight</u>

Next, this court turns to risk of flight.

While the defendant does has familial ties in New Hampshire

and employment ties in Massachusetts, he does appear to have been living a somewhat itinerant lifestyle at the time of his arrest. For the two months prior to his arrest he was living in a motel in Hampton, New Hampshire. He told Pretrial Services that he is looking for an apartment with his present girlfriend, Somara Garcia. Prior to moving to the motel the defendant lived with another girlfriend at Farnham Street in Lawrence for a year. The defendant's residential history includes incarceration in the Middleton House of Correction, living with another girlfriend at 9 Bevel Street in Lawrence for a period of three or four years and living with his mother at two different addresses in Lawrence.

If convicted of the above captioned charges the defendant faces a lengthy period of incarceration including the possibility of a minimum mandatory period of incarceration. This in itself serves as an incentive to flee.

Based on the totality of the circumstances this court finds by a preponderance of the evidence that there is no condition or combination of conditions that will assure the appearance of the defendant as required.

C. Obstruction of Justice

Next, this court turns to obstruction of justice.

At this time this court does not find that there is a risk

21

that the defendant will obstruct justice.

V. Conclusion

The government has satisfied this court by clear and convincing evidence that no condition or combination of conditions of release (set forth under 18 U.S.C.§ 3142(b) or (c)) will reasonably assure the safety of any other person or the community if the defendant is released.  In addition the government has satisfied this court at least by a preponderance of the evidence that there is no condition or combination of conditions that will assure that the appearance of the defendant as required.

Having evaluated the factors set forth in 18 U.S.C. § 3142(g), this court orders the defendant detained subject to the following conditions:

> (1)   The defendant be, and hereby is, committed to the custody of the Attorney General for confinement in a corrections facility, separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

> (2)   The defendant be afforded reasonable opportunity for private consultation with his counsel; and

> (3)   On Order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined shall deliver the defendant to an

authorized Deputy U.S. Marshal for the purpose of any appearance in connection with a court proceeding.

*Marianne B. Bowler*

**MARIANNE B. BOWLER**
Chief United States Magistrate Judge