UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES<br><br>v.<br><br>JOSE E. GONZALEZ,<br><br>Defendants | )<br>)<br>)<br>)  CRIM. NO. 04-10046-RGS<br>)<br>)<br>)<br>)<br>)<br>) |

DEFENDANT JOSE E. GONZALEZ'S SENTENCING MEMORANDUM &
RESERVATION OF RIGHT TO EVIDENTIARY HEARING
ON ISSUE OF DRUG QUANTITY

For the reasons set forth below and in his Objections to the Presentence Report (''PSR,'') Defendant Jose E. Gonzalez respectfully requests that the Court (Stearns, J.) impose upon him a sentence of: (1) a term of imprisonment of no more than 60 months; (2) a four year term of supervised release; (3) no monetary fines; and (4) a special assessment of $400. The defendant also requests that the Court recommend him for participation in the 500 hour drug treatment program sponsored by the Federal Bureau of Prisons. He also would like the Court to impose as a special condition of his supervised release that he participate in ongoing drug treatment. If possible, the defendant would like to serve the committed portion of his sentence at FMC Devens.

1

A.  PERSONAL AND FAMILY INFORMATION

The defendant Jose E. Gonzalez is 29 years old. He is the second of three children born to Jose E. Gonzalez, Sr. and Maria Santos who were married and lived in Ponce, Puerto Rico.

Jose's parents divorced when he was 11 years old. After that, his father did not provide the family with emotional or financial support. A year or so after her divorce, Jose's mother moved with him and his brother and sister to Jayuya, Puerto Rico to be closer to her own family. When Jose was 14, Ms. Santos moved with her children to Lawrence, Massachusetts hoping to improve their financial situation.

Despite his mother's best efforts, Jose became addicted to cocaine and marijuana shortly after arriving in Lawrence. He eventually dropped out of high school in the 11th grade. Without any real life plan, Jose gravitated toward peers who, like himself, tended to be wasting their lives and spending most of their time ''hanging out'' on the streets.

Jose experienced the full impact of his self-destructive choices in August of 1997 when he was shot in the chest at point blank range while trying to intervene in a verbal dispute on behalf of a friend. The bullet reportedly passed through the defendant's body just inches from his heart.

Realizing that he was lucky to have survived, Jose pulled back from his former associates in Lawrence. Once sufficiently recovered from his wounds, Jose worked as an apprentice autobody

repairman for Luis Feliciano at A&L Autobody in Lowell, Massachusetts for the next six years. (3/12/04 Letter of Luis Feliciano, attached as "Exhibit A.") By 2001, Jose had a second job as a full-time drainer cleaner for Drain King. He worked for Drain King for 1 ½ years until a business slowdown caused his employer to lay him off. (3/8/04 Letter of David Cioto, attached as "Exhibit B.") Both employers report that Jose was a dependable, hardworking employee. However, Jose's periodic bouts with drug addiction, and the need to feed it, continued to cast a shadow across his life.

The defendant's drug dependency became so substantial that it lead to his selling drugs in 2003 as a means of supporting his habit. More particularly, beginning on September 16, 2003, Jose sold drugs to a Government informant on three separate occasions, events that were recorded on tape.

Shortly after the last of these transactions on November 13, 2003, Jose made a decision to sever all contact with his former acquaintances from Lawrence and drug-related lifestyle. His decision is confirmed by the Government's own investigation results: despite its continuing intensive surveillance efforts in the area, Government agents did not observe Jose engaging in any further illegal activity.

By the time Jose was arrested in February, 2004, he was trying, somewhat unsuccessfully, to become sober on his own. Nevertheless, he was working full-time for A & L Autobody and was

scheduled to return to work for Mr. Cioto at Drain King on March 1, 2004. (See, Exhibits A & B.) Mr. Cioto, well aware of the defendant's battle with drug addiction and his pending federal criminal charges, wrote to Magistrate Judge Bowler to confirm that he was willing to employ Jose if he was released on bail. (Exhibit B.)

By the time of his federal arrest, another important change in the defendant's life occurred. He became romantically involved with his current girlfriend Samara Garcia. Samara is a single mother of a five year-old daughter Jaime Lee. She works full-time as an administrative assistant in a doctor's office and has never been involved with drugs.

Samara has been very supportive of Jose since his arrest and detention. Along with Jose's mother, she visits Jose at least twice a week at Plymouth House of Correction despite the long drive from her home in New Hampshire. Both women have appeared for every court date, even those when they knew Jose would not be present.

Although they are not yet married, Jose and Samara have a strong commitment to one another and are working together to raise Jaime Lee. They hope to build a life together and, someday, have more children.

Jose has matured and grown spiritually while incarcerated. This growth has reinforced his resolve to live a respectable life: he has no interest in ever resuming the ``double life'' of

4

a drug addict. He has been clean and sober for more than a year. Now, with a family waiting for him to complete his federal sentence, Jose has real incentive as well as the support necessary to abandon permanently his former drug-related behaviors.

Jose Gonzalez understands that he must pay the penalty for his drug-related criminal activity. However, he intends to use his committed time as productively as possible. Finally realizing the importance of education, Jose plans to study for his GED while incarcerated. With the Court's support, he would like to enroll in the 500 hour treatment program offered by the Bureau of Prisons. He also would like drug treatment to be mandated as part of his supervised release as a further incentive to keep himself drug-free and in a supportive sober environment.

With the help of his extended family, and with the structure and oversight that the Court and the Probation Department can provide, the defendant is confident that he can overcome his drug addiction to become a productive member of society. He hopes to ``settle down'' with Samara and Jamie Lee, and to secure full-time employment as a mechanic or plumber, as soon as possible.

B.  <u>CRIMINAL RECORD OVERSTATES SERIOUSNESS OF CRIMINAL HISTORY</u>

For the reasons set forth in his Objections to the PSR, the defendant maintains that his criminal record overstates the seriousness of his criminal history. (See, PSR, pp. 36-38.) Consequently, he urges the Court to grant him a downward departure from Criminal History Category II to Criminal History Category I pursuant to Section 4A1.3 (b)(1). As the Probation Department acknowledges on page 38 of the PSR, this departure is available to the Court.

C.  <u>APPROPRIATE DRUG QUANTITY ATTRIBUTION</u>

The defendant agrees with the Probation Department that he should be held accountable for 29.5 grams of crack cocaine, the total drug amount involved in the three transactions for which he has plead guilty. (PSR, Paragraph 44, p. 13.) The Government may seek to attribute in excess of 200 grams of cocaine base to the defendant for sentencing purposes. (See, <u>Government's Objections</u>, PSR, pp. 33-34.) A sentence based upon this drug weight would push the defendant's Base Offense Level up to 34, nearly tripling his (advisory) sentencing range exposure to 168 to 210 months at Criminal History Category II. (See, <u>Probation Officer's Response</u>, pp. 34-35.)

Mr. Gonzalez strenuously opposes the Government's position. The additional 200 grams of the drug weight that the Government urges the Court to attribute to Mr. Gonzalez is related to bald

6

statements that the defendant allegedly made during the charged drug transactions. The Probation Department accurately characterizes these statements as ``puffing'' or sales talk.

The Government has no corroborating evidence that would demonstrate, under any standard of proof, that the huge amount of additional drug weight it presses the Court to adopt is appropriate. Defense counsel suggests that if it had such proof, the Government would have added additional substantive counts, or at least increased quantity language, to the superseding indictment. As it is, the defendant was indicted and plead guilty to drug weight in excess of five grams only on each of the three substantive counts.

Under the United States v. Booker, the district court has the obligation of determining a ``reasonable'' sentence based upon the factors set forth in 18 U.S.C Section 3553 (a) and using the federal sentencing guidelines in an advisory fashion. The 60 month mandatory minimum sentence of incarceration proposed by the defendant, coupled with drug treatment during and following his committed portion of his sentence, would fully satisfy all of the Section 3553 (a) factors. It also is within the applicable (advisory) guideline range for a Total Offense Level 25, Criminal History Category I offender.[1]

---

[1] If the Court does not grant the defendant's motion for downward departure, his sentencing range as an Offense Level 25, Criminal History Category II offender would be 63 to 78 months.

7

After giving him credit for the roughly 14 months that he has been held in federal pretrial detention since February 24, 2004, the defendant still will need to serve another 46 months in custody. Under these circumstances, the defendant and his counsel urge the Court to impose the minimum mandatory committed sentence and no more.

Given the Government's objection, <u>the defendant respectfully reserves his right to an evidentiary sentencing hearing on the issue of drug weight</u>.

E. <u>SENTENCING PARTICULARS</u>

    1.  <u>Committed Portion of the Sentence</u>

As indicated previously, the defendant wants to participate in the 500 hour drug treatment program sponsored by the Federal Bureau of Prisons. In order to qualify for this program, the defendant reportedly must have at least 36 months left of his committed sentence. The defendant has been held in pretrial detention for approximately 14 months. In addition, he reportedly has earned 54 days of good time credit. A 60 month committed prison sentence, 16 months or so of which already have been served, will leave the defendant with roughly 44 months of committed time. Assuming the Court recommends him, the defendant would qualify for participation in the 500 hour drug program with this sentence.

2. <u>Proposed Conditions of Supervised Release</u>

The defendant requests that the court impose a four year term of supervised release. He would like the Court to order as a special condition of his release that he participate in drug treatment. The defendant is committed to leaving his drug addiction behind him and would welcome the opportunity to have the support of court mandated and supervised drug aftercare treatment.

3. <u>Fines and Fees</u>

The <u>Presentence Report</u> confirms that the defendant has no present ability to pay any fines or fees. Consequently, he respectfully request that they be waived. He will pay the mandatory assessment of $400 with family assistance.

4. <u>Remaining Considerations</u>

Assuming that he can get drug treatment there, the defendant is requesting that the Court recommend him for incarceration at Fort Devens so that he could serve his committed time as close to his family as possible. The defendant would be grateful for any recommendation that the Court could make to keep him within visiting distance of his young family.

Finally, since he was shot in 1997, the defendant has experienced significant shortness of breath, particularly in hot, humid conditions. These conditions seem to be worsening over

time, particularly due to the defendant's sedentary lifestyle while confined.  If possible, the defendant would like to receive physical therapy and other medical treatment to address this permanent respiratory condition.

CONCLUSION & RESERVATION REGARDING
AN EVIDENTIARY SENTENCING HEARING

For all of these reasons, the defendant respectfully requests that the Court adopt his sentencing proposal.  Further, in view of the Government's <u>Objection</u> regarding drug weight for relevant conduct purposes, the defendant reserves his right to an evidentiary hearing on this issue at sentencing.

Respectfully submitted,
Jose E. Gonzalez,
By his attorney,

Dated: April 12, 2005

_____
Debra A. DelVecchio
B.B.O. No. 542139
DEL VECCHIO & HOUSEMAN
15 Front Street
Salem, MA  01970
(978) 740-5999

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and complete copy of this document was served upon the attorney of record for each party and each party appearing pro se, by mail, _____ on 4/13/05

_____

10

Luis Feliciano
A & L Auto Body
55 West Third Street
Lowell, MA  01850
March 12, 2004

Hon. Marianne B. Bowler
Chief Magistrate Judge
United States District Court
Moakley Federal Court House
One Courthouse Way, Suite 8420
Boston, MA  02110

RE:  Jose Gonzalez

Dear Judge Bowler,

I own A & L Auto Body in Lowell. Jose Gonzalez has worked for me on and off during the last six years learning auto body repair. He has been working full-time for me for the past year as an apprentice auto body repairman. His wages vary each week depending on the repair jobs that he performs in my shop.

Jose has been an extremely reliable and trustworthy worker for me. In fact, when I am on the road attending to other business matters, I depend on Jose to oversee my office and other employees. His absence from my shop since his arrest last month has been a hardship for me in running my business.

Mr. Gonzalez' lawyer has informed me that he is being detained by federal authorities on drug charges. Please understand that I would like to have Mr. Gonzalez continue to work for me on a full-time basis if he can be released on bail.

Thank you for your consideration. If you have any questions, you may contact me on my celluar telephone at (603) 661-2216.

Very truly yours,

Luis Feliciano


DEFENDANT'S EXHIBIT A

David Cloto
Drain King
6 Brittany Lane
Atkinson, NH 03811
March 8, 2004

Hon. Marianne B. Bowler
Chief Magistrate Judge
United States District Court
Moakley Federal Court House
One Courthouse Way, Suite 8420
Boston, MA 02110

RE: Jose Gonzalez

Dear Judge Bowler,

For the last 9 ½ years, I have owned and operated Drain King, a drain cleaning service. Jose Gonzalez worked as a drain cleaner for me for approximately 1 ½ years starting in about 2001. He was a dependable, hard working employee. Although a prior business slow down resulted in my laying him off, Mr. Gonzalez was scheduled to return to work for me on March 1, 2004.

I understand that Mr. Gonzalez is being detained by federal authorities on drug charges. This letter will confirm that if the Court decides to release Mr. Gonzalez on bail, I have a full-time job waiting for him earning $395 per week.

Thank you for attention. If you have any questions, you may contact me at (603) 235-9820.

Sincerely,

David Cloto

DEFENDANT'S
EXHIBIT
B